UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO: 3:18-cv-400-CHB

PAYMENT ALLIANCE INTERNATIONAL, INC.                    PLAINTIFF

v.

FEDERAL INSURANCE COMPANY                                DEFENDANT

   Serve: CT CORPORATION SYSTEM
          150 West Market Street, Suite 800
          Indianapolis, IN 46204

## COMPLAINT

Plaintiff, Payment Alliance International, Inc. ("PAI"), for its Complaint against Federal Insurance Company, states the following:

1. Plaintiff, PAI, is a corporation incorporated under the laws of the state of Kentucky and is authorized to do business in the Commonwealth of Kentucky, with its principal office in Jefferson County, Louisville, Kentucky.

2. Defendant, Federal Insurance Company ("Federal"), is an insurance company incorporated under the laws of the state of Indiana with a principal place of business in the state of Indiana. It's registered agent for service of process is CT Corporation System, 150 West Market Street, Suite 800, Indianapolis, IN 46204.

3. Federal is a member of the Chubb Group of Insurance Companies.

4. Jurisdiction and venue are proper in this court because the insurance contract at issue was entered in Jefferson County, the amount in controversy exceeds the jurisdictional requirements of this court and the parties are citizens of different states. 28 U.S.C. § 1332(a).

5. At all times relevant, PAI was insured under multiple policies of insurance with Defendant Federal including policy number 8207-2406 providing, among other coverages, defense and indemnity for directors, officers and entity liability ("D&O" policy).

6. PAI made all premium payments to Federal to keep this policy in full force and effect and complied with all policy requirements in presenting claims for policy coverages and policy benefits.

**Facts and Breach of Contract Claims**

7. PAI operates automated teller machines ("ATMs") and facilitates the processing of ATM transactions.

8. Claytonage, Inc. D/B/A Cheaper Cigs #4 ("Claytonage") is an Ohio Corporation, engaged in, among other things, the business of owning and operating video lottery establishments that contain ATMs.

9. Beginning March 31, 2014, upon assignment of Claytonage's ATM Operator Application/Agreement with another provider, PAI assumed operating and servicing interests in ATMs located on Claytonage's property.

10. Using ATMs on Claytonage's property, patrons could withdraw funds by paying a surcharge fee for each transaction, and beginning March 31, 2014, such withdrawal transactions were processed by PAI.

11. Through separate processing contracts, network memberships and required bank sponsorships, all ATM related transactions on Claytonage's property, beginning March 31, 2014 and at all times relevant thereafter, were performed in PAI's name with PAI owning all settlement and income generated from them.

12. From the income generated and owned by PAI, Claytonage was due a fee from each ATM transaction.

13. On or about June 5, 2014, an ACH Authorization was prepared by an agent of PAI as a way for PAI to direct deposit fees owed to Claytonage. However, for reasons unknown to PAI, this ACH Authorization was not signed by Claytonage or presented to Claytonage's bank. Instead, the authoriziation was signed in Claytonage's name and without its approval or consent and erroneously identified Claytonage's trade name and bank account as one belonging to an entity called "Cheaper Cigs, Inc." The ACH Authorization was presented to Community Trust Bank where Cheaper Cigs, Inc., not Claytonage, maintained the identified account. (Exhibit 1, Intervening Complaint ¶16-17).

14. "Cheaper Cigs, Inc." is not affiliated with Claytonage. At all times relevant, Claytonage's trade name was "Cheaper Cigs #4."

15. Because of the erroneous ACH Authorization, from June 9, 2014 to January 16, 2016, PAI directly deposited fees due to Claytonage into the account owned by Cheaper Cigs, Inc. D/B/A Bailey's (Bailey's). Upon information and belief, Bailey's accepted and spent all the funds incorrectly deposited into its account.

16. After discovering the misdirected deposits resulting from the erroneous and unauthorized ACH submisssion, PAI sought to recover the monies sent to Bailey's including filing suit in the Circuit Court of Cabell County, West Virginia seeking the return of all funds.

17. Soon thereafter, Bailey's proceeded to bankruptcy. No misdirected funds were recovered.

18. Claytonage intervened in PAI's suit against Bailey's seeking payment from PAI of the fees it was owed, but never received. Among other claims, Claytonage alleged PAI was

liable due to negligent management, negligent supervision and vicarious liability. PAI notified Federal of this suit and requested defense and indemnity. (Exhibit 1, Intervening Complaint).

19. In correspondence dated May 23, 2016, Federal notified PAI that it was reviewing coverage for the claims made by Claytonage, and agreed it was contractually obligated to defend PAI from Claytonage's Intervening Complaint under the D&O policy. In compliance with its duty to defend, this correspondence included Federal's consent to Frost Brown Todd, LLC ("FBT") to serve as counsel for PAI agreeing to pay FBT's fees and other defense costs. (Exhibit 2, May 23, 2016 correspondence).

20. Despite acknowledging its duty and obligation to defend PAI, and consenting to FBT's representation of PAI, Federal has refused to pay FBT's fees and other defense costs incurred by PAI. Federal's refusal to pay the fees and costs incurred is in breach of Federal's defense obligations under the D&O policy that Federal acknowledged in its May 23, 2016 correspondence.

21. Further, on or about March 23, 2017, PAI, with Federal's participation, consent and agreement, settled the Intervening Complaint brought by Claytonage for $816,533.00. Federal agreed and consented that this settlement represented the amount due to Claytonage because of the misdirected fees.

22. PAI requested Federal pay the entire settlement pursuant to Federal's indemnity obligation under the D&O policy. In response, Federal wrongfully denied its obligation to fully fund the settlement, agreeing only to provide $250,000 of indemnity coverage under the D&O policy.

23. Because Federal breached its indemnity obligation to pay the entire settlement, PAI was forced to pay the remaining $566,533 of the settlement to Claytonage.

24. Federal denied its policy obligation to pay indemnity benefits funding the total consented to settlement, even though the consented to settlement was within the $5 million aggregate liability limit sold to PAI and was a loss resulting from a non-indemnified claim made during the D&O policy period.

25. Federal's partial indemnity payment of $250,000 was made without release of any claims specific to the parties' rights under the subject policies and with reservation of all rights by the parties to adjudicate Federal's wrongful denial of PAI's claim.

WHEREFORE, Payment Alliance International demands judgment against Federal Insurance Company for performance of the contract and for damages as a result of Federal's breach of contract including:

1. Judgement against Federal for breach of contract in the amount of $566,533 representing the remainder of the consented to settlement with Claytonage paid by PAI;

2. Judgment against Federal for breach of contract for all attorney fees and costs incurred by PAI for the defense of the claims by Claytonage;

3. Statutory Interest on the final claim payment at 12% and attorney's fees under KRS 304.12-235;

4. Prejudgment interest; and

3. Any and other relief to which it may appear entitled.

Respectfully submitted,

/s/ Christopher M. Mussler
Christopher M. Mussler
cmussler@gsblegal.com
GWIN, STEINMETZ & BAIRD PLLC
401 West Main Street, Suite 1000
Louisville, KY 40202
(502) 618-5700 (phone)
(502) 618-5701 (fax)